UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE-OPELOUSAS DIVISION

IN RE STONE ENERGY CORP.
SHAREHOLDER DERIVATIVE
LITIGATION

CIVIL ACTION NO. 05-CV-2166 (Lead)
05-CV-2167
06-CV-0171

JUDGE TUCKER L. MELANÇON
MAG. JUDGE HILL

## MOTION TO STAY OR, IN THE ALTERNATIVE, MOTION TO DISMISS

Patrick W. Gray (Bar No. 6265)
Amy E. Allums (Bar No. 27356)
JOHNSON GRAY McNAMARA, LLC
PO Box 51165
Lafayette, LA 70505

and

VINSON & ELKINS L.L.P.
Walter B. Stuart IV (T.A.) (Bar No. 12551)
Clifford Thau
David R. Lurie
Hilary L. Preston
Ronald L. Oran Jr.
666 Fifth Avenue, 26th Floor
New York, NY 10103

*Attorneys for Defendants David H. Welch, Kenneth H. Beer, and James H. Prince*

## TABLE OF CONTENTS

Table of Authorities ............................................................................................. ii

Preliminary Statement .......................................................................................... 1

Background ............................................................................................................ 3

Argument ............................................................................................................... 5

    1.      The action should be stayed. ....................................................................5

    2.      The Complaint should be dismissed for lack of standing. .......................9

          a.    Interestedness .....................................................................................11

             i    Plaintiffs fail to allege a breach of the duty of care. ..............12

             ii    Plaintiffs fail to allege a breach of the duty of loyalty...........13

             iii   Plaintiffs fail to allege a breach of the duty of good faith. ....14

          b.    Independence .....................................................................................16

Conclusion ........................................................................................................... 18

TABLE OF AUTHORITIES

**Cases**

*Am. Life Ins. Co. v. Stewart,*
  300 U.S. 203 (1937) ........................................................................................... 8

*Aronson v. Lewis,*
  473 A.2d 805 (Del. 1984) ........................................................................... 10, 16

*Beam v. Stewart,*
  845 A.2d 1040 (Del. 2004) ......................................................................... 16, 17

*Braddock v. Zimmerman,*
  906 A.2d 776 (Del. 2006) ................................................................................ 10

*Breault v. Folino,*
  2002 WL 31974381 (C.D. Cal. Mar. 15, 2002).............................................. 7, 8

*Brudno v. Wise,*
  2003 WL 1874750 (Del. Ch. Apr. 1, 2003) ................................................... 6, 9

*Cincinnati Bell Cellular Sys. Co. v. Ameritech Mobile Phone Serv., Inc.,*
  1996 WL 506906  (Del. Ch. Sept. 3, 1996) ..................................................... 12

*Cinerama, Inc. v. Technicolor, Inc.,*
  663 A.2d 1156 (Del. 1995) .............................................................................. 11

*Continuing Creditors' Comm. of Star Telecom. v. Edgecomb,*
  385 F. Supp. 2d 449 (D. Del. 2004) ................................................................ 12

*Derdiger v. Tallman,*
  773 A.2d 1005 (Del. Ch. 2000) ......................................................................... 7

*Emerald Partners v. Berlin,*
  787 A.2d 85 (Del. 2001) ............................................................................ 10, 12

*Financial Acquisition Partners LP v. Blackwell,*
  440 F.3d 278 (5th Cir. 2006) ............................................................................ 4

*Guttman v. Huang,*
  823 A.2d 492 (Del. Ch. 2003) ................................................................... 11, 13

*In re BISYS Group Inc. Der. Action,*
  396 F. Supp. 2d 463 (S.D.N.Y. 2005) ............................................................. 18

*In re E.F. Hutton Banking Practices Litig.,*
  634 F. Supp. 265 (S.D.N.Y. 1986) .................................................................... 9

*In re General Motors (Hughes) S'holder Litig.*,
 2005 WL 1089021  (Del. Ch. May 4, 2005) ........................................................... 11

*In re Ltd., Inc., S'holders Litig.*,
 2002 WL 537692 (Del. Ch. Mar. 27, 2002) ........................................................... 17

*In re Ramu Corp.*,
 903 F.2d 312 (5th Cir. 1990) ..................................................................................... 5

*In re Walt Disney Co. Der. Litig.*,
 906 A.2d 27 (Del. June 8, 2006) ............................................................................ 14

*In re Westell Techs. Inc.*,
 2001 WL 755134 (Del. Ch. June 28, 2001) ........................................................ 7, 8

*In re Whitehall Jewelers, Inc. S'holder Der. Litig.*,
 2006 WL 468012 (N.D. Ill. Feb.27, 2006) ........................................................... 18

*Jacobs v. Yang*,
 2004 WL 1728521 (Del. Ch. Aug. 2, 2004) ......................................................... 17

*Kamen v. Kemper Financial Services, Inc.*,
 500 U.S. 90 (1991) .................................................................................................... 9

*Kaplan v. Peat, Marwick, Mitchell & Co.*,
 540 A.2d 726 (Del. 1988) .................................................................................... 9, 17

*Khanna v. McMinn*,
 2006 WL 1388744 (Del. Ch. May 9, 2006) .......................................................... 17

*Kogan v. Robinson*,
 432 F. Supp. 2d 1075 (S.D. Cal. 2006) .................................................................. 17

*Landis v. N. Am. Co.*,
 299 U.S. 248 (1936) ............................................................................................. 5, 8

*Lovelace v. Software Spectrum Inc.*,
 78 F.3d 1015 (5th Cir. 1996) .................................................................................... 4

*Neer v. Pelino*,
 389 F. Supp. 2d 648 (E.D. Pa. 2005) ..................................................................... 18

*Oberly v. Kirby*,
 592 A.2d 445 (Del. 1991) ....................................................................................... 11

*Orman v. Cullman*,
 794 A.2d 5 (Del. Ch. 2002) .................................................................................... 16

iii

*Rales v. Blasband,*
  634 A.2d 927 (Del. 1993) ............................................................................ 16

*Rattner v. Bidzos,*
  2003 WL 22284323 (Del. Ch. Oct. 7, 2003) .............................................. 13, 14, 15

*Reusche v. Barfield,*
  Civ. A. No. 04-2213 (E.D. La. Dec. 15, 2004) ........................................... 7

*Rothman v. Gregor,*
  220 F.3d 81 (2d Cir. 2000) .......................................................................... 4

*Sanders v. Wang,*
  1999 WL 1044880 (Del. Ch. Nov. 9, 1999) ................................................ 12

*Schnell v. Porta Sys. Corp.,*
  1994 WL 148276 (Del. Ch. Apr. 12, 1994) ................................................. 7, 8

*Shaev* v. *Armstrong,*
  2006 WL 391931 (Del. Ch. July 19, 2006) .................................................. 16

*Smith v. Van Gorkom,*
  488 A.2d 858 (Del. 1985) ............................................................................ 12

*Smith v. Waste Mgmt., Inc.,*
  407 F.3d 381 (5th Cir. 2005) ....................................................................... 2

*Sousa v. Prosser,*
  2004 WL 1497764 (E.D. La. Jul. 1, 2004) .................................................. 7

*Srebnik v. Dean,*
  2006 WL 2790408 (D. Colo. Sept. 26, 2006) ............................................. 17

*Stepak v. Dean,*
  434 A.2d 388 (Del. 1981) ............................................................................ 10

*Stone v. Ritter,*
  2006 WL 3169168 (Del. Nov. 6, 2006) ....................................................... 12, 14, 15

*Ueltzhoffer v. Fox Fire Dev. Co.,*
  1991 WL 271584 (Del. Ch. Dec. 19, 1991) ................................................. 13

*Verdin v. Louisiana Land and Explor.,*
  1995 WL 311897 (E.D. La. May 18, 1995) .................................................. 7

*White v. Panic,*
  783 A.2d 543 (Del. 2001) ............................................................................ 10

iv

**Statutes**

15 U.S.C. § 7243 ............................................................................................. 17

Del. Chan. Ct. R. 23.1 .............................................................................. 9, 10, 11

Del. Gen. Corp. L. § 102(b)(7) .......................................................................... 12

Fed. R. Civ. P. 12(b)(1) ...................................................................................... 1

Fed. R. Civ. P. 23.1 ............................................................................................ 9

Defendants David H. Welch, Kenneth H. Beer and James H. Prince ("Movants"),[1] each of whom is a current or former officer and/or director of nominal Defendant Stone Energy Corporation ("Stone" or the "Company"), hereby move the Court for: (i) a stay of the action pending the adjudication of a dispositive motion to dismiss a putative securities fraud class action also pending before this Court (the "Securities Action") upon which most of the allegations and claims made in this case are based;[2] or (ii) in the event that the Court does not grant the parties' request for a stay, the dismissal of the Third Amended Consolidated Complaint ("Complaint") pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of standing.

<u>PRELIMINARY STATEMENT</u>

Plaintiffs (who allege they are Stone shareholders) purport derivatively to assert claims on behalf of the Company against the Individual Defendants for the indemnification of liabilities the Company might incur if Stone is held liable in the Securities Action ("Tag-Along Claims").

In the event that the Court agrees with Stone and the other defendants in the Securities Action that the dispositive motion pending in the Securities Action is properly treated as a motion to dismiss, Plaintiffs have agreed to join in a request that this action be stayed until the motion to dismiss the Securities Action is decided.[3]

---

[1] Movants and the remaining non-corporate defendants are collectively referred to as the "Individual Defendants." Defendants James Stone, John Laborde, Peter Barker, George Christmas, Richard Pattarozzi, David Voelker, Raymond Gary, Robert Bernhard, David Welch and B.J. Duplantis are collectively referred to as the "Director Defendants."

[2] *In re Stone Energy Corp. Securities Litigation*, 05-CV-2088 (W.D. La.); see also p. 4 & n.6, *infra* (addressing procedural history of Securities Action).

[3] On December 11, 2006, Magistrate Judge Methvin *sua sponte* entered an Order converting the Motion to Dismiss Lead Plaintiff's Consolidated Class Action Complaint ("Securities Motion to Dismiss") filed in the Securities Action into a motion for summary judgment. Certain defendants in the Securities Action filed a Statement of Objections and Motion for Modification of Order ("Objection") on December 20, 2006, requesting that Magistrate Judge Methvin's Order be modified or set aside and that the Securities Motion to Dismiss continue to be treated as a motion to dismiss only. As of this date, the Objection remains pending. In the event that the Court concludes that the Securities Motion to Dismiss should not have been converted into one for summary judgment, the derivative action Plaintiffs have indicated that they will consent to a stay of the instant matter until this Court adjudicates the Securities Motion to Dismiss.

Furthermore, Movants respectfully submit that an order staying this action should be entered because the Tag-Along Claims are patently premature. The Tag-Along Claims are expressly grounded on the same allegations that form the basis for the Securities Action. Indeed, a large portion of the Complaint was copied nearly verbatim from the initial Securities Action complaints. Furthermore, the primary "damages" Plaintiffs seek to recover on behalf of the Company – *i.e.*, potential civil securities fraud liabilities – will arise only if, and to the extent that, Stone and its management are ultimately unsuccessful in defending against the Securities Action. Accordingly, as a number of courts within this and other Circuits have recognized in similar circumstances, it is inefficient and impracticable to proceed with a tag-along shareholder derivative action until liability is adjudicated in the underlying action. Section 1, *infra*.

In the event that this Court should choose not to stay this matter, the Tag-Along Claims should be dismissed for lack of standing because of Plaintiffs' unexcused failure to make demand on Stone's Board of Directors (the "Board"), as Delaware law[4] mandates in an action where shareholders seek to maintain claims on behalf of a corporation.

The demand requirement is excused only where a plaintiff provides particularized factual allegations demonstrating that a majority of the members of the board of directors were (i) lacking in disinterestedness or (ii) not independent. Plaintiffs fail to plead facts making either showing.

A director is lacking in disinterestedness if he has a material conflict of interest relating to the subject matter of a potential litigation. Plaintiffs seek to concoct such conflicts by conclusorily asserting that the Director Defendants bear personal liabilities to the Company for the Tag-Along Claims. Conclusory assertions are not enough, however. Delaware law requires

---

[4] Because Stone is incorporated in the State of Delaware, Delaware substantive law applies. *Smith v. Waste Management, Inc.*, 407 F.3d 381, 383-84 (5th Cir. 2005).

2

facts supporting such assertions, and the Complaint is wholly lacking in support for Plaintiffs'
assertions.

Plaintiffs contend that the Director Defendants:

- breached their duties of care, but ignore the fact that Stone's
  corporate charter contains an exculpatory clause that precludes all
  but one of the Director Defendants from bearing damages liability
  for any such claim;

- breached their duties of loyalty to Stone through putatively
  improper trading in Company stock, but fail to identify even a
  single suspicious transaction undertaken by a single Director
  Defendant;

- breached their duties of good faith by knowingly permitting Stone
  personnel to engage in supposed misconduct in connection with the
  matters at issue in the Securities Action, but fail to proffer any
  allegations of fact to support the assertion. Section 2.a, *infra*.

A director may only be found to be not independent within the meaning of Delaware law
if he is not in a position to make an impartial business judgment, *e.g.*, because he is beholden to
an interested director. Plaintiffs proffer no allegations supporting their conclusory assertion that
the Director Defendants lack independence, pointing only to putative friendships and extraneous
business relationships among certain of Stone's Board members – none of which are sufficient to
support a challenge to independence under settled Delaware law. Section 2.b, *infra*.

## BACKGROUND

_Stone._   Stone is a publicly traded independent oil and gas company headquartered in
Lafayette, Louisiana and is engaged in the acquisition and subsequent exploration, development,
operation and production of oil and gas properties located in the Gulf of Mexico, the Rocky
Mountain Region and the Williston Basin.

_The Securities Action._ On October 6, 2005, Stone announced that it had conducted an
internal review of its proved hydrocarbon reserve estimates, following which the Company

decided to make certain revisions to those estimates ("Revision") and to "restate certain historical financial statements and provided selected financial data . . . ." ("Restatement").[5] Thereafter, a series of putative class action law suits were filed in this Court against Stone and current or former Stone officers Welch, Prince, Beer and D. Peter Canty purporting to allege violations of federal securities laws in connection with the subject matter of the Revision and Restatement; these suits were subsequently consolidated as the Securities Action.[6]

The Tag-Along Claims. In the wake of the Securities Action, Plaintiffs brought the instant (subsequently consolidated) shareholder derivative actions,[7] and a largely identical action was filed in state court.[8] The Complaint lists various purported causes of action, including "insider trading" (Compl. ¶ 125(a)), "breaches of fiduciary duties, abuse of control, gross mismanagement, waste of corporate assets, unjust enrichment and violations of the Sarbanes-Oxley Action of 2002" (Compl. ¶ 1). Each of these claims, however, is expressly founded on the same allegations asserted in the Securities Action. Indeed, a large portion of the Complaint was copied nearly verbatim from the initial Securities Action complaints (See Schedule attached hereto as Exhibit

---

[5] See Form 8-K, filed Oct. 6, 2005 (attached hereto as Exhibit A); Form 8-K, filed Nov. 9, 2005 (attached hereto as Exhibit B). Without converting a motion to dismiss into a motion for summary judgment, a Court may consider "documents that the plaintiffs either possessed or knew about and upon which they relied in bringing the suit" as incorporated into the complaint and may rely on them in their entirety for purposes of determining what inferences may be drawn from them. *Financial Acquisition Partners LP v. Blackwell*, 440 F.3d 278, 286 (5th Cir. 2006) (citations omitted). The Court may also consider "public disclosure documents required by law to be, and that have been, filed with the SEC," *Blackwell*, 440 F.3d 278 at 286 (citing *Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000) (internal citations omitted), "for the purpose of determining what statements the documents contain," *Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1018 (5th Cir. 1996).

[6] *Weiland v. Stone Energy Corp.*, No. 05-CV-2088 (W.D. La.); *Meyer v. Stone Energy Corp.*, No. 05-CV-2109 (W.D. La.); and *Holzrichter v. Stone Energy Corp.*, No. 05-CV-2220 (W.D. La.) comprise *In re: Stone Energy Corp. Sec. Litig.*, No. 05-CV-2088 (W.D. La.). *Porch v. Stone Energy Corp.*, No. 05-CV-2049 (W.D. La.), which was filed on December 6, 2005, was the initial complaint but was voluntarily dismissed.

[7] *Farer v. Stone*, No. 05-CV-02166 (W.D. La.), *Fisk v. Stone*, No. 05-CV-02167 (W.D. La.) and *Joint Pension Fund, Local No. 164 I.B.E.W. v. Stone*, No. 06-CV-0171 (W.D. La.).

[8] *Sakhno v. Stone Energy Corp.*, No. 2006-0505 is pending in the Fifteenth Judicial District Court, Lafayette Parish, Louisiana.

C), and the current complaints in both matters rely on the same foundational allegations. (*Compare, e.g.*, Compl. ¶ 102 *with* Consol. Sec. Action Compl. ¶¶ 59, 62, 65, etc.)

Furthermore, virtually all of Plaintiffs' claims for relief are premised on the Company's potential liability for the fraud putatively alleged in the Securities Action complaints. Plaintiffs herein conclusorily assert that the Individual Defendants breached their fiduciary duties by participating in or failing to prevent the purported securities fraud, and should therefore be required to reimburse the Company for any resulting damages or other losses. (Compl. ¶ 44(b).) Put otherwise, Plaintiffs assert that the Individual Defendants should be required to indemnify the Company for the liabilities that might arise if Stone is ultimately found liable in the Securities Action, which has yet even to be tested against a pending dispositive motion, let alone litigated to conclusion.

<u>ARGUMENT</u>

1.    <u>The action should be stayed.</u>

Staying this action is wholly consistent with relevant precedents and would serve the interests of judicial economy. Furthermore, in the event that the Court modifies or overrules Magistrate Judge Methvin's Order and agrees to treat the pending Securities Motion to Dismiss solely as a motion to dismiss, Plaintiffs will join in an application requesting a stay of this action until the Securities Motion to Dismiss is adjudicated.[9]

A court has broad authority to stay one action in favor of another where doing so will promote judicial economy and may avoid unnecessary litigation and effort by the parties. *Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936); *In re Ramu Corp.*, 903 F.2d 312, 318 (5th Cir. 1990) ("[t]he stay of a pending matter is ordinarily within the trial court's wide discretion to control the

---

[9] Movants believe that – for the reasons stated below – a stay should extend beyond the decision on the dispositive motion pending in the Securities Action and until the Securities Action is finally adjudicated. The Court, however, need not reach that issue at this time.

5

course of litigation"). All applicable considerations militate in favor of staying the Tag-Along Claims until the merits of the Securities Action – on which the Tag-Along Claims are based – are heard and decided by this Court.

First, it is premature to litigate the Tag-Along Claims, which amount to claims for indemnification of an entirely contingent liability. The Tag-Along Claims are expressly based on the same allegations as – and are contingent upon Stone's purported liability in – the Securities Action. It would therefore be premature for this Court to require Plaintiffs to attempt to litigate the merits of the Tag-Along Claims before the Securities Action is adjudicated. Such a course of action would invite piecemeal and duplicative litigation that may prove wholly unnecessary should Stone prevail in defending against the underlying Securities Action.

Under similar circumstances, a number of courts have granted stays of derivative and other actions for these reasons. For example, in *Brudno v. Wise*, the Delaware Chancery Court held that "'practical considerations' make it unduly complicated, inefficient, and unnecessary for [a similar tag-along derivative] Action to proceed ahead or apace of the Federal Securities Action." No. Civ. A. 19953, 2003 WL 1874750, at *4 (Del. Ch. Apr. 1, 2003). The court reasoned that, in the event that the securities action was found to be without merit, "it is not apparent what, if anything, would be left of this [derivative] Action." *Id.* The court further explained that the tag-along derivative action "cannot rationally proceed to trial in advance of" an adjudication of liability in the securities case, since the tag-along action "is, in reality, a claim for indemnification" for the company's putative securities fraud liabilities, and it would put the cart before the horse to attempt to determine whether the officers and directors were obligated to provide reimbursement for an unadjudicated liability. *Id.* at *4.

The Eastern District of Louisiana recently came to the same conclusion and enjoined a tag-along derivative action under substantively identical circumstances. *See* Minute Entry, *Reusche v. Barfield*, Civ. A. No. 04-2213 (E.D. La. Dec. 15, 2004) (staying derivative action in favor of federal securities action predicated on same allegations) (attached hereto as "Exhibit D"); *accord Schnell v. Porta Sys. Corp.*, No. Civ. A. 12,948, 1994 WL 148276, at *4 (Del. Ch. Apr. 12, 1994) (staying derivative action in favor of securities fraud action because, "while the claims in the two courts may be stated in different ways, they are actually the same claims and arise out of the same transactional facts"); *Breault v. Folino*, No. SACV010826, 2002 WL 31974381, at *2 (C.D. Cal. Mar. 15, 2002) (staying derivative action in favor of securities action on basis that it was in company's best interest to avoid having its officers and directors defend two actions simultaneously); *Derdiger v. Tallman*, 773 A.2d 1005, 1016-17 (Del. Ch. 2000) (reasoning that stay was warranted where plaintiffs repackaged allegations that supported previously filed federal securities law claim in purported breach of fiduciary duty action); *In re Westell Techs. Inc.*, No. Civ. A. 8533, 2001 WL 755134, at *2 (Del. Ch. June 28, 2001) (staying derivative action in favor of federal securities actions and rejecting plaintiff's argument that issues were different because derivative actions raised different claims); *Sousa v. Prosser*, No. Civ. A. 03-2942, 2004 WL 1497764, at *4 (E.D. La. July 1, 2004) (staying related action to avoid piecemeal litigation and risk of inconsistent results); *see also Verdin v. Louisiana Land and Explor.*, No. 933537, 1995 WL 311897, at *1 (E.D. La. May 18, 1995) (employing courts' "inherent discretionary authority to order a stay" in civil action pending outcome of related Bureau of Indian Affairs proceeding; reasoning that "judicial economy" would be served by having the matters litigated only once).

Second, it is of no moment that Plaintiffs are purportedly pursuing different claims for relief in the Tag-Along Claims than those at issue in the Securities Action because Plaintiffs'

allegations are duplicative of, and their theories of liability are wholly dependent upon, the Securities Action.  *See Derdiger*, 773 A.2d at 1016-17 (holding that stay was warranted where plaintiffs repackaged the same allegations that supported previously filed federal securities law claim as breach of fiduciary duty claims); *In re Westell*, 2001 WL 755134, at *2 (rejecting argument against stay that derivative actions raised different claims than federal securities actions); *Schnell*, 1994 WL 148276, at *4 ("while the claims in the two courts may be stated in different ways, they are actually the same claims and arise out of the same transactional facts").

Third, premature litigation of the Tag-Along Claims is not only impracticable, but it could also prejudice the Company, in whose name Plaintiffs purport to assert those claims.  *See, e.g., Landis v. N. Am. Co.*, 299 U.S. at 255 (stay granted if clear case of hardship to moving party); *American Life Ins. Co. v. Stewart*, 300 U.S. 203, 216 (1937) (in determining whether to impose a stay, court weighs benefits to and hardships upon the parties).  "The derivative plaintiff, as a fiduciary to the company, owes a duty of loyalty to the company to act in its best interest." *Breault*, 2002 WL 31974381, at *1.

It is in Stone's interest to have the Company and its officers and directors single-mindedly focus upon the defense of the Securities Action, thereby potentially avoiding or limiting the very supposed liabilities for which Plaintiffs purport to seek indemnification.  That corporate interest would be compromised by forcing Stone and the Individual Defendants to engage in this collateral litigation over whether and which of the Individual Defendants might be required to provide reimbursement for yet to be adjudicated liabilities.  *See id.* at *2 (staying derivative action in favor of securities action on the basis that it was in company's best interest to avoid having its officers and directors defend two actions simultaneously).  Furthermore, putting Stone in the position of litigating against the very persons who may serve as witnesses on the Company's

behalf in the defense of the Securities Action would threaten to prejudice the Company's ability to mount a vigorous defense. *See id.*; *In re E.F. Hutton Banking Practices Litig.*, 634 F. Supp. 265, 269-70 (S.D.N.Y. 1986) ("a disinterested board might well conclude" that it is not an "appropriate time to institute litigation" against a company's current or former officers or directors while the company is a defendant in related civil actions and subject to an investigation by the SEC because it might undercut their effectiveness as witnesses).

Finally, a stay of the Tag-Along Claims will not prejudice the Company. Stone will not even potentially incur the vast majority of the purported damages for which Plaintiffs seek to recover until and if liability is found in the Securities Action; Stone hardly stands to suffer any injury on account of the imposition of a stay until those cases are decided. *See Brudno*, 2003 WL 1874750, at *4. Indeed, as explained, postponing the adjudication of the Tag-Along Claims will benefit Stone and its shareholders by enabling the Company to conserve its resources and focus on the defense of the underlying Securities Action.

2.    The Complaint should be dismissed for lack of standing.

In the event that the Court concludes that a stay is inappropriate, we respectfully submit that this action should be dismissed because Plaintiffs lack standing to prosecute any of the claims asserted in the Complaint on behalf of the Company due to their failure to make a demand on the Board that such an action be brought. Pursuant to Delaware Chancery Court Rule 23.1, applicable as a matter of substantive law in this diversity action,[10] "the right to bring a derivative action does not come into existence until the plaintiff shareholder has made a demand on the corporation to institute such an action or until the shareholder has demonstrated that demand

---

[10] *See Kamen v. Kemper Financial Services, Inc.*, 500 U.S. 90, 100-01 (1991) ("the function of the demand doctrine in delimiting the respective powers of the individual shareholder and of the directors to control corporate litigation clearly is a matter of 'substance,' not 'procedure.'"). Pleading requirements for derivative actions other than the pleading of demand futility are provided by FED. R. CIV. P. 23.1. *Id.* at 97.

would be futile." *Kaplan v. Peat, Marwick, Mitchell & Co.*, 540 A.2d 726, 730 (Del. 1988) ("pre-suit demand under Chancery Court Rule 23.1, is an objective burden which must be met in order for the shareholder to have capacity to sue on behalf of the corporation") (citing *Stepak v. Dean,* 434 A.2d 388, 390 (Del. 1981)).

Because Plaintiffs initiated this "derivative action without making a pre-suit demand on the [B]oard," their complaint must adequately allege demand futility. *White v. Panic*, 783 A.2d 543, 550 (Del. 2001). This means that the complaint "must overcome the powerful presumptions of the business judgment rule" by alleging sufficient and particularized facts demonstrating that demand is futile because a majority of the board is "incapable of exercising its power and authority." *Id.* at 550-51 (citations omitted). Plaintiffs fail to plead facts to overcome this presumption.

The business judgment rule is a "cardinal precept of the General Corporation Law of the State of Delaware," providing that "directors, rather than shareholders, manage the business and affairs of the corporation." *Aronson v. Lewis*, 473 A.2d 805, 811 (Del. 1984) (overruled on other grounds). The business judgment rule imposes a presumption that, in making a business decision for a company – including the decision whether or not to bring a lawsuit – the "directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company and its shareholders." *Emerald Partners v. Berlin*, 787 A.2d 85, 90 (Del. 2001). Where, as here, the underlying "subject of the derivative suit is not a business decision of the board" (Plaintiffs allege that Board members participated in or allowed fraud) "[d]emand futility under Rule 23.1" is established only if the Complaint contains "particularized factual allegations creat[ing] a reasonable doubt that, as of the time the complaint was filed, [a majority of the members of] the board of directors could have properly exercised

10

[their] independent and disinterested business judgment in responding to a demand." *Braddock v. Zimmerman*, 906 A.2d 776, 784 -85 (Del. 2006).

In this case, Plaintiffs do not remotely meet this burden by alleging that a majority of Stone's Board of Directors is lacking in disinterestedness or independence; accordingly, Plaintiffs do not have standing to assert the claims they attempt to allege in the Complaint.

    a.    Interestedness

In order to excuse their failure to make demand on interestedness grounds, Plaintiffs must plead facts establishing a conflict between the directors' interests and those of the company or its shareholders sufficient to "deprive[] shareholders of a 'neutral decision-making body.'" *Cinerama, Inc. v. Technicolor, Inc.*, 663 A.2d 1156, 1170 (Del. 1995) (quoting *Oberly v. Kirby*, 592 A.2d 445, 467 (Del. 1991)). Immaterial or speculative conflicts provide no basis for a claim; rather, a plaintiff must plead facts establishing a conflict of such "a sufficiently material importance, in the context of [each individual] director's economic circumstances, as to have made it improbable that the director could perform her fiduciary duties without being influenced by her overriding personal interest." *In re General Motors (Hughes) S'holder Litig.*, No. Civ. A. 20269, 2005 WL 1089021, at *8 (Del. Ch. May 4, 2005); *see Cinerama, Inc.*, 663 A.2d at 1167 (the governing "'actual person' test requires an independent judicial determination regarding the materiality of the '*given*' director's self-interest").

Plaintiffs here assert that a majority of the Director Defendants have a conflict of interest because prosecution of the Tag-Along Claims would force them "to sue themselves" for purported breaches of the fiduciary duties of care, loyalty and good faith. (Compl. ¶ 125(l).) But, such a bald assertion is insufficient to excuse demand under Delaware law. Rather, to satisfy Rule 23.1, a derivative complaint must allege "particularized facts regarding the directors that create a sufficient likelihood of personal liability" for one of the claims asserted against them.

11

*Guttman v. Huang*, 823 A.2d 492, 502 (Del. Ch. 2003) ("[I]t is unwise to formulate a common law rule that makes a director 'interested' whenever a derivative plaintiff cursorily alleges" liability). None of Plaintiffs' purported causes of action is sufficient to meet this standard.

### i    Plaintiffs fail to allege a breach of the duty of care.

First, Plaintiffs assert that a majority of Stone's directors are lacking in disinterestedness because they bear potential damages liabilities for putative breaches of the duty of care, but this theory fails as a matter of law. The ninth Article of Stone's Charter provides that "a director of the corporation shall not be liable to the corporation or its stockholders for monetary damages for breach of fiduciary duty as a director." (*See* Exhibit E attached hereto, Article Ninth of the Certificate of Incorporation of the Corporation, Exhibit 3.1 to Stone's 2005 10-K, which is incorporated by reference into the Complaint at ¶ 118.) Under Delaware's General Corporation Law, this provision exculpates all non-executive directors – *i.e.*, all but one of the Director Defendants – from potential damages liability for a breach of the duty of care. Del. Gen. Corp. L. § 102(b)(7); *see Stone v. Ritter*, No. 93, 2006, --- A.2d ---, 2006 WL 3169168, at *3-4 (Del. Nov. 6, 2006); *Continuing Creditors' Comm. of Star Telecom. Inc. v. Edgecomb*, 385 F. Supp. 2d 449, 463 (D. Del. 2004) ("When 'the standard of review *ab initio* is the business judgment rule, properly raising the existence of a valid exculpatory . . . provision in the corporate charter entitles director [defendants] to dismissal of any claims for [monetary] damages against them that are based solely on alleged breaches of the board's duty of care.'") (internal citations omitted)).[11]

---

[11] Plaintiffs likewise fail adequately to allege a duty of care claim against the single executive Director Defendant, Mr. Welch (the Company's CEO). To sustain a duty of care claim, a derivative plaintiff must provide particularized allegations establishing that the defendant was grossly negligent in undertaking his duties. *Smith v. Van Gorkom*, 488 A.2d 858, 873 (Del. 1985) (superseded by statute on other grounds, as explained by *Emerald Partners v. Berlin*, 787 A.2d 85, 90 (Del. 2001)). The Complaint contains no particularized allegations respecting Mr. Welch's conduct, let alone allegations establishing that he was grossly negligent.

Plaintiffs' purported claims for "gross mismanagement" and "waste of corporate assets" are forms of duty of care or good faith claims, and therefore, are not separately addressed. A gross mismanagement claim requires allegations

ii   <u>Plaintiffs fail to allege a breach of the duty of loyalty</u>.

<u>Second</u>, Plaintiffs likewise fail colorably to allege a breach of the duty of loyalty by any of the Director Defendants.  Plaintiffs purport to allege claims founded on supposedly illegal trading in Stone securities by Stone Directors.[12]  These allegations, however, solely consist of (i) the conclusory assertion that each of the Director Defendants "knew the adverse non-public information about the business of Stone Energy, as well as its finances, markets and present and future business prospects" (Compl. at ¶¶ 24-25 & 29-36), and (ii) a list of stock transactions engaged in by certain of the Director Defendants at various points during the four and one half year putative class period alleged in the Securities Action.  (Compl. ¶ 121.)  Such conclusory assertions that directors traded based on "adverse non public information," however, are insufficient to excuse demand.  *Rattner v. Bidzos*, No. Civ. A. 19700, 2003 WL 22284323, at *10-12 (Del. Ch. Oct. 7, 2003).

Stock sales by corporate officers and directors are commonplace, and thus, do not alone establish any inference of potential culpability.  *Id.*  Rather, to establish a potential fiduciary duty claim grounded on insider trading, a plaintiff must allege with particularity that a director undertook specified transactions based on specified non-public material information.  *Guttman*, 823 A.2d at 502 (a plaintiff must allege with particularity that a defendant "engaged in material trading activity at a time when (one can infer from particularized pled facts that) they knew

---

that a director's actions were "recklessly uninformed" or "outside the bounds of reason," *i.e.*, grossly negligent. *Cincinnati Bell Cellular Sys. Co. v. Ameritech Mobile Phone Serv. of Cincinnati*, Civ. A. No. 13389, 1996 WL 506906, at *14 (Del. Ch. Sept. 3, 1996). For a "waste claim to survive a motion to dismiss, the plaintiff must allege facts sufficient to show that the corporation received no consideration for the transferred asset. The standard is stringent and requires that no person of ordinary business judgment would conclude that the deal was fair to the corporation." *Sanders v. Wang*, No. 16640, 1999 WL 1044880, at *10 (Del. Ch. Nov. 9, 1999).

[12] Plaintiffs also purport to assert a claim for "abuse of control."  Outside of the context of a breach of the duty of loyalty owed by a majority shareholder to minority shareholders, *e.g.*, *Ueltzhoffer v. Fox Fire Dev. Co.*, Civ. A. Nos. 9871 & 9900, 1991 WL 271584, at *8 (Del. Ch. Dec. 19, 1991), there does not seem to be a separate cause of action for abuse of control under Delaware law.  Regardless, such a claim would fail because Plaintiffs cite to no disloyal conduct that could serve as a foundation for such a claim.

material, non-public information about the company's financial condition"). The Complaint does not come close to meeting this pleading requirement. Plaintiffs do not make any of the requisite particularized allegations concerning (i) what supposed non-public material information any Director Defendant allegedly possessed when undertaking a transaction, (ii) how he might have obtained such information, (iii) whether and why the specified transactions allegedly occurred at suspicious times, or (iv) whether and why any of the transactions involved suspicious amounts. *Id.* Given Plaintiffs' inability colorably to allege that any Director Defendant might be liable for insider trading, Plaintiffs' attempt to excuse demand on loyalty grounds necessarily fails.

iii  <u>Plaintiffs fail to allege a breach of the duty of good faith.</u>

<u>Finally</u>, Plaintiffs also fail colorably to allege a breach of the duty of good faith by a majority of the Director Defendants.[13] There are three categories of misconduct that may support a claim for a breach of the duty of good faith: "[i] where the fiduciary intentionally acts with a purpose other than that of advancing the best interests of the corporation, [ii] where the fiduciary acts with the intent to violate applicable positive law, or [iii] where the fiduciary intentionally fails to act in the face of a known duty to act, demonstrating a conscious disregard for his duties." *In re Walt Disney Co. Der. Litig.*, 906 A.2d 27, 66-67 (Del. June 8, 2006). Plaintiffs fail to allege facts remotely supporting any of these theories.

The Complaint contains no particularized allegations that any Director Defendant intentionally violated the law or acted against corporate interests in a manner that does not involve traditional disloyalty. Rather, Plaintiffs proffer the conclusory assertion that Director Defendants "participated in the issuance of false and/or misleading statements" (Compl. ¶¶ 24-25 & 29-36), without alleging any details of a claim.

---

[13] The duty of good faith is technically a subset of the duty of loyalty, but for analytical purposes it is easier to distinguish between the two. *Stone*, 2006 WL 3169168, at *6.

Similarly, the Complaint provides no allegations of fact supporting Plaintiffs' conclusory assertion that the Director Defendants "abandoned and abdicated their responsibilities and fiduciary duties." (Compl. ¶ 144.) "Delaware courts have recognized that most of the decisions that a corporation, acting through its human agents, makes are, of course, not the subject of director attention[; c]onsequently, a claim that directors are subject to personal liability for employee failures is possibly the most difficult theory in corporation law upon which a plaintiff might hope to win a judgment." *Stone*, 2006 WL 3169168, at *8 (internal citations omitted). A derivative plaintiff must allege particularized facts demonstrating "a sustained or systematic failure of the board to exercise oversight – such as an utter failure to attempt to assure a reasonable information and reporting system exists – [in order to] establish the lack of good faith that is a necessary condition to liability." *Id.* at *9 (internal citations omitted).

Plaintiffs do not satisfy this pleading requirement. Instead, "[w]ith the benefit of hindsight, the plaintiffs' complaint seeks to equate a bad outcome with bad faith." *Id.* The Complaint only recites the fact that Stone corrected and restated certain of its financial statements when errors were discovered. There are no particularized allegations "regarding the Company's internal financial controls," the "actions and practices of [Stone's] audit committee," or any "red flags" that should have indicated to the Director Defendants that there was a problem with Stone's hydrocarbon reserves estimates. *Rattner*, 2003 WL 22284323, at *12. "In the absence of red flags, good faith in the context of oversight must be measured by the directors' actions to assure a reasonable information and reporting system exists and not by second-guessing after the occurrence of employee conduct that results in an unintended adverse outcome." *Stone*, 2006 WL 3169168, at *9 (internal citations omitted).

Furthermore, Plaintiffs' vague allegations affirmatively belie their claim of a lack of oversight. The Complaint acknowledges that Stone's Audit Committee engaged an independent law firm to investigate the reasons for the Revision and Restatement (Compl. ¶¶ 10, 12, 100, 104) and that it engaged independent third-party engineering firms to review the Company's reserves (*see, e.g.* Compl. ¶¶ 103, 105). "The one thing that is emphatically not a [good faith] claim is the bald allegation that directors bear liability where a concededly well-constituted oversight mechanism, having received no specific indications of misconduct, failed to discover fraud." *Shaev* v. *Armstrong*, No. 110, 2006, 2006 WL 391931, at *5 (Del. Ch. July 19, 2006).

   b. <u>Independence</u>

The Complaint is also devoid of colorable allegations that a majority of Stone's Board lacks independence. In this context, "[i]ndependence means that a director's decision is based on the corporate merits of the subject before the board rather than extraneous considerations or influences." *Orman* v. *Cullman*, 794 A.2d 5, 24 (Del. Ch. 2002) (quoting *Aronson*, 473 A.2d at 816). Plaintiffs must plead particularized facts establishing a reasonable doubt as to whether a majority of the Board is "sufficiently independent to make an impartial decision despite the fact that they are presumptively disinterested." *Rales* v. *Blasband*, 634 A.2d 927, 936 (Del. 1993). They fail to satisfy this standard.

The Complaint's allegations regarding independence are paltry. <u>First</u>, Plaintiffs assert that certain Director Defendants work, or have worked, together in other contexts (Compl. ¶¶ 125(j)(i, ii, and v), but such "[a]llegations of mere personal friendship or a mere outside business relationship, standing alone, are insufficient to raise a reasonable doubt about a director's independence." *Beam* v. *Stewart*, 845 A.2d 1040, 1050 (Del. 2004); *see also Orman* v. *Cullman*, 794 A.2d 5, 27 (Del. Ch. 2002) ("The naked assertion of a previous business relationship is not enough to overcome the presumption of a director's independence.").

Second, Plaintiffs assert that one director and the son of another do business with Stone (Compl. ¶¶ 125(j)(iii & iv)), but such allegations are not sufficiently particularized because they provide no explanation of why these business relationships are material to the Director Defendants at issue. *Khanna v. McMinn*, No. Civ. A. 20545-NC, 2006 WL 1388744, at *17 (Del. Ch. May 9, 2006) ("the inquiry into independence turns . . . on whether the Company's business relationship with [the defendant] was material" to him as a director).

Finally, Plaintiffs assert that the Director Defendants are not independent because they receive compensation for their service on the Board, which is determined by members of the Board's Compensation Committee. (Compl. ¶¶ 125(b), 125(f).) Allegations regarding retention of board seats and compensation, however, do not establish a lack of independence absent particularized allegations regarding the materiality of the position and related compensation to particular defendants. *Stewart*, 845 A.2d at 1054 n. 37; *see also Jacobs v. Yang*, No. Civ. A. 206-N, 2004 WL 1728521, at *4 (Del. Ch. Aug. 2, 2004) ( "[A]llegations as to one's position as a director and the receipt of director's fees, without more . . . are not enough for purposes of pleading demand futility.") (quoting *In re Ltd., Inc., S'holders Litig.,* No. CIV.A. 17148-NC, 2002 WL 537692, at *4 (Del. Ch. Mar. 27, 2002)).

*     *     *

"The right to bring a derivative action does not come into existence until the plaintiff shareholder has made a demand on the corporation to institute such an action or until the shareholder has demonstrated that demand would be futile." *Kaplan*, 540 A.2d at 730. Plaintiffs do not allege facts demonstrating that a majority of the Board is interested because of a substantial threat of liability for the claims asserted in the Complaint or is lacking in independence, therefore,

17

their Tag-Along Claims should be dismissed for lack of standing.[14]

CONCLUSION

For the foregoing reasons, Movants respectfully request that the Court grant the parties'

request to stay the instant actions or, in the alternative, dismiss the Complaint for lack of standing.

Respectfully submitted,

Dated: December 20, 2006

By:

Patrick W. Gray (Bar No. 6265)
Amy E. Allums (Bar No. 27356)
JOHNSON GRAY McNAMARA, LLC
PO Box 51165
Lafayette, LA 70505
(337) 412-6348

and

VINSON & ELKINS L.L.P.
Walter B. Stuart IV (T.A.) (Bar No. 12551)
Clifford Thau
David R. Lurie
Hilary L. Preston
Ronald L. Oran Jr.
666 Fifth Avenue, 26th Floor
New York, NY 10103
(212) 237-0000

*Attorneys for Defendants David H. Welch,
Kenneth H. Beer, and James H. Prince*

---

[14] Plaintiffs purport to assert a claim for unjust enrichment, alleging that certain Defendants improperly profited from alleged fiduciary duty breaches, but Plaintiffs fail adequately to plead the underlying breaches, so this claim fails.

Apparently recognizing that their other claims lack any semblance of merit, Plaintiffs also purport to assert a claim for the disgorgement of certain compensation under Section 304 of the Sarbanes-Oxley Act of 2002. 15 U.S.C. § 7243. As *every* reported federal decision that has considered such a claim has recognized, however, that statute does not create a private right of action. *Srebnik v. Dean*, No. 05-cv-01086, 2006 WL 2790408, at *5 (D. Colo. Sept. 26, 2006) (ruling that "neither the text of § 302" nor "the structure of the Sarbanes-Oxley Act demonstrates Congressional intent to create a private remedy."); *Kogan v. Robinson*, 432 F. Supp. 2d 1075, 1078 (S.D. Cal. 2006) ("this Court joins all other courts that have considered this issue, and concludes Section 304 does not explicitly create a private remedy"); *In re Whitehall Jewelers, Inc. S'holder Der. Litig.*, No. 05 C 1050, 2006 WL 468012, at *8 (N.D. Ill. Feb.27, 2006) (same); *In re BISYS Group Inc. Der. Action*, 396 F. Supp. 2d 463, 464 (S.D.N.Y. 2005) (same); *Neer v. Pelino*, 389 F. Supp. 2d 648, 652 (E.D. Pa. 2005) (same). Furthermore, even if the Company could assert a private action under Section 304, Plaintiffs fail adequately to allege the underlying breaches that might potentially give rise to a disgorgement obligation under the statute.

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served upon all counsel of record,

on this _20th_ day of December 2006.

Patrick W. Gray